IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

REGAL CENTER LLC,      §
§
    Plaintiff,      §
§
v.      §     Civil Action No. 3:21-CV-02837-N
§
FIDELITY NATIONAL TITLE      §
INSURANCE COMPANY,      §
§
    Defendant.      §

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Fidelity National Title Insurance Company's ("Fidelity") motions to strike expert witnesses Brad Fees [76] and Kyle Salzman [78]. For the reasons below, the Court denies both motions.

### I. ORIGINS OF THE MOTION

This case arises out of an insurance dispute between Plaintiff Regal Center LLC ("Regal") and its title insurer, Fidelity. Regal purchased a piece of real property in Fort Worth, Texas (the "Property"). *Real Estate Contract*, Def.'s Appx 2–25 [82]. Regal obtained a title insurance policy from Providence Title Insurance, with Fidelity acting as the title insurance underwriter. *Providence Title Commitment*, Def.'s Appx. 27, 45 [82]; *Title Policy*, Pl.'s Appx. 10 [94]. Unknown to Regal, Atmos Energy ("Atmos") had a general utility easement on the Property. Atmos gave Regal notice that it planned to construct a pipeline on the Property pursuant to its easement. *Atmos Notice Letter*, Def.'s Appx. 65 [82]; *Roeder Decl.*, Pl.'s Appx. 6 [94]. Regal then filed a claim with Fidelity

ORDER – PAGE 1

asserting that it had obtained knowledge of an adverse interest in the Property.  *Pl.'s Claim Notice*, Def.'s Appx. 68–69 [82]; *Roeder Decl.*, Pl.'s Appx. 6–7 [94].  Fidelity accepted the claim and informed Regal that it fell within Regal's title coverage.  *Coverage Letter*, Def.'s Appx. 73–74 [82]; *Roeder Decl.*, Pl.'s Appx. 6–7 [94].  Fidelity then began its efforts to resolve the claim.  Fidelity negotiated a partial release of the easement with Atmos. *Atmos Email*, Def.'s Appx. 82–100 [82]; *Atmos Email*, Pl.'s Appx. 59 [94].  After some back-and-forth between the parties, Regal agreed to the partial release.  *Plaintiff's Email*, Def.'s Appx. 102–03, 105 [82]; *Roeder Decl.*, Pl.'s Appx. 5–6 [94].

Fidelity then retained an appraiser to determine the loss Regal experienced covered by the policy.  *Appraisal Notice*, Def.'s Appx. 131–32, 134 [82].  The appraiser determined that the property depreciated in value due to the easement by $231,255.00.  *Appraisal Email*, Def.'s Appx. 167–72 [82].  Fidelity sent a check for the value of $231,255.00 to Regal and informed Regal the case would be closed.  *Payment Correspondence*, Def.'s Appx. 178–80 [82].  Regal believed the number was too low and did not cover its loss, so Regal rejected the check and informed Fidelity that it would follow up with a settlement demand.  *Rejection Correspondence*, Def.'s Appx. 184 [82].  Two years later, Regal filed the present suit, seeking relief for the following causes of action: (1) breach of contract, (2) promissory estoppel, (3) violation of Chapter 541 of the Texas Insurance Code, and (4) breach of the duty of good faith and fair dealing.  Pl.'s Original Petition [1-1].  Fidelity moved for summary judgment, which the Court granted as to the claims for promissory estoppel, violation of Chapter 541 of the Texas Insurance Code, and breach of the duty of

good faith and fair dealing. Order [102].  Now, Fidelity seeks to strike the expert report and exclude the testimony of Regal's expert witnesses, Brad Fees and Kyle Salzman.

## I. LEGAL STANDARD

Under Federal Rule of Evidence 702 a witness must be qualified as an expert by "knowledge, skill, experience, training, or education."  FED. R. EVID. 702.  A qualified expert may testify if the expert's specialized knowledge will aid the trier of fact and "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  *Id*.  District courts must determine that expert testimony "is not only relevant but reliable," and make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid" and "can be applied to the facts in issue."  *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 589, 592–93 (1993); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) (making the *Daubert* principles applicable to all expert testimony).  The focus, however, "must be solely on the principles and methodology, not on the conclusions that they generate."  *Daubert*, 526 U.S. at 595.

District courts have broad discretion to determine the admissibility of expert testimony. *Sims v. Kia Motors of Am.*, 839 F. 3d 393, 400 (5th Cir. 2016).  But the rejection of expert testimony is the exception, not the rule.  *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prod. Liab. Litig.*, 2016 WL 9560113, at *2–3 (N.D. Tex. Oct. 3, 2016) (citations omitted).  The *Daubert* inquiry may not replace the adversarial system.  *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002).  "[V]igorous cross-examination,

presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 250 (citing *Daubert*, 526 U.S. at 596). Indeed, "while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits." *Pipitone*, 288 F.3d at 250.

## II. THE OPINIONS OF BOTH WITNESSES ARE ADMISSIBLE

The Court holds that the reports and testimony of Regal's experts are relevant, reliable, and admissible to the extent the opinions pertain to Regal's remaining claim for breach of contract. In contrast, the portions of the proffered testimony pertaining only to Regal's claims for promissory estoppel, violation of Chapter 541 of the Texas Insurance Code, and breach of the duty of good faith and fair dealing that have already been resolved by the Court's order granting partial summary judgment, are irrelevant and inadmissible.

### A. Fees and Salzman's Opinions Are Relevant

The crux of Fidelity's argument regarding the relevance of Fees and Salzman's opinions is that the opinions do not speak solely to the calculations necessary to use the *Prendergast*[1] formula to calculate Regal's damages. Def.'s Motion at 8–9 [76]; Def.'s Motion at 10–11 [78]. This Court has already determined twice throughout this litigation that Texas courts have not mandated that the *Prendergast* formula is the only means of calculating damages in a title insurance case. *See, e.g., Sw. Title Ins. Co. v. Northland Bldg. Corp.*, 542 S.W.2d 436, 452–53 (Tex. Civ. App. — Fort Worth 1976); Order

---

[1] *Southern Title Guaranty Co. Inc. v. Prendergast*, 494 S.W.2d 154 (Tex. 1973).

Granting In Part and Denying In Part Motion For Summary Judgment [102]; Order Denying Motion For Reconsideration [110].  Fees and Salzman's opinions are relevant so long as they will aid the trier of fact in resolving a fact issue, regardless of their use or non-use of the *Prendergast* formula.  *See Bocanegra v. Vicmar Servs., Inc.,* 320 F.3d 581, 584 (5th Cir. 2003).

Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  FED. R. EVID. 401.  In the context of expert testimony, scientific, technical, or other specialized knowledge is relevant if it "will assist the trier of fact to understand the evidence or to determine a fact in issue."  FED. R. EVID. 702.  Relevance depends upon whether the expert's reasoning or methodology can be applied to the facts in issue.  *Knight v. Kirby Inland Marine Inc*., 482 F.3d 347, 352 (5th Cir. 2007). The expert testimony must "fit" the case's facts.  *Daubert*, 509 U.S. at 591. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."  *Id*.

Both Fees and Salzman's expert reports and testimony will help the factfinder determine how much money Regal was entitled to under its title insurance policy with Fidelity, an essential finding for Regal's breach of contract claim.  Under the policy, liability is limited to "the difference between the value of the title as insured and the value of the title subject to the risk insured against by this policy." *Title Insurance Policy*, Def.'s Appx. 61 [82]; *Title Insurance Policy*, Pl.'s Appx. 26 [94].  Fees and Salzman's expert reports provide different calculations factoring into the reduced value of the property now

burdened by a partial easement.  Accordingly, both expert reports are relevant to the extent they are used to help the jury determine how much the property value has diminished and how much Regal is owed in compensation under the insurance policy.

### B. Fees and Salzman's Opinions Are Reliable

Fidelity similarly bases much of its reliability argument on the fact that Fees and Salzman did not exclusively rely on the *Prendergast* formula.  Def.'s Motion at 7–8 [76]; Def.'s Motion at 8–9 [78].  As discussed above, the Court is not convinced by Fidelity's arguments that Texas law mandates the exclusive use of this formula as a matter of law. Accordingly, the Court does not find that Fees and Salzman's opinions are unreliable on these grounds.  The remainder of this section addresses only Fidelity's reliability arguments not related to *Prendergast*.

There is no definite formula for determining whether expert testimony is reliable or unreliable.  It is the duty of the district court to judge admissibility "based on the particular facts of the case."  *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 379 (5th Cir. 2010). Ultimately, the test is "a flexible one," so "[t]rial judges retain 'broad latitude' both in deciding how to determine whether an expert's testimony is reliable, and ultimately, whether the testimony is, in fact, reliable."  *Hodges v. Mack Trucks Inc.*, 474 F.3d 188, 194 (5th Cir. 2006) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 142 (1999)).

Fidelity argues also that Fees's opinions are unreliable because he "relies on rampant inconsistencies throughout his report" and that Salzman's opinions are unreliable because he "relied upon outdated data from 2014" without "independently assessing and verifying the data's present-day validity."  Def.'s Motion at 7–8 [76]; Def.'s Motion at 9

ORDER – PAGE 6

[78].  The Court does not find that these reasons render either expert report so unreliable it is inadmissible.  Fidelity's arguments regarding Fees's evaluation that do not relate to *Prendergast* are all resolved by the Amended Appraisal filed by Regal, in which Fees provided a step-by-step approach of his methodology and clarified the purported inconsistencies regarding, for example, which tract of land he was referring to. *See generally Amended Appraisal of Brad Fees*, Exhibit 5, Pl.'s Appx [96-1].  The Amended Appraisal is sufficiently reliable to be admissible.  Moreover, the Court finds Salzman's opinions to be sufficiently reliable.  Salzman's report details the documents and studies upon which he relies in his analysis and evaluates them in light of Regal's different tract of land, using them as a comparative and predictive tool.  *See generally Rebuttal Report of Kyle Salzman*, Exhibit 6, Pl.'s Appx [96-1].  Whether a jury will find this data sufficiently applicable to the property at issue, although it is not the same property used in the study, is left to the judgment of the jury. That Salzman provides opinions based on the data from studies provided to him without making an independent investigation into the issues studied at other real property sites does not itself make his opinions unreliable.

Fees and Salzman's reports reach the minimum threshold of reliability to be admissible.  Fidelity's objections go to the weight, rather than admissibility, of the expert reports.  To the extent Fidelity disagrees, it is free to engage in "[v]igorous cross-examination [and] presentation of contrary evidence."  *Daubert*, 509 U.S. at 596.  The factfinders then may decide whether to accept or reject the testimony.  *See Pipitone*, 288 F.3d at 250.  The Court thus denies Fidelity's motion to strike Fees and Salzman's testimony.

ORDER – PAGE 7

## CONCLUSION

For the reasons set forth above, the Court denies Fidelity's motions to strike the expert reports and testimony of Brad Fees and Kyle Salzman.

Signed July 8, 2024.

David C. Godbey
Chief United States District Judge